S. R. HOOVER et al., Appellees, v. FIRST AMERICAN FIRE INSURANCE COMPANY of New York, Appellant.

No. 42394.

560

JUNE 23, 1934.

D. Cole McMartin, for appellant.

O. M. Slaymaker and R. E. Killmar, for appellees.

DONEGAN, J.—Plaintiffs were the owners of certain lots and a dwelling house thereon in the town of Woodburn, Clarke county, Iowa. On November 15, 1929, the defendant insurance company

issued a policy of insurance on the said dwelling house in the sum of $1,500, which also insured the household goods and personal effects of plaintiffs upon said premises in the sum of $500. On April 18, 1932, the said dwelling house was entirely destroyed by fire and certain of the household goods and personal effects located therein were damaged. Proofs of loss were submitted by plaintiffs to the defendant insurance company, but payment of the loss not having been made by the insurance company, the plaintiffs on June 18, 1932, filed a petition at law claiming the sum of $1,500 for the total loss of the dwelling house and $250.50 for loss and damage to household goods and personal effects. The defendant insurance company answered, admitting the execution of the policy, but denying generally all other allegations of the petition. By way of affirmative defense, the insurance company alleged that at the time of the execution of the policy the insured premises were covered by a mortgage to one Elsie Price in the sum of $1,050, of which no notice was given to the defendant insurance company; that after policy was issued, and without the defendant insurance company's knowledge or consent, plaintiffs gave a mortgage to W. F. Boor on the dwelling house and real estate in the sum of $1,250, which avoided the said policy as to said dwelling house; that after the issuance of the policy the plaintiffs without the knowledge and consent of the defendant insurance company gave three chattel mortgages on the insured household goods and personal effects for which loss is claimed, said mortgages being in the sum of $325, $275, and $1,000, respectively, in violation of the terms of said policy, which thereby voided said policy as to said household goods and personal effects. For reply to the affirmative defenses set up in defendant's answer, plaintiffs alleged that the defendant's agent, who had solicited the insurance and made application for the policy, was fully informed about the Price mortgage when the application for the insurance was made to him; that the mortgage for $1,250 to W. F. Boor was never delivered and never became a lien on the house and never had any legal force or effect; that two of the chattel mortgages did not cover the household goods and personal effects; and that the third chattel mortgage was never delivered, never became a lien on the household goods and effects, and never had any force or effect.

Trial was had to a jury resulting in verdict and judgment for plaintiffs. From such judgment, the defendant appeals.

I. Appellant assigns as error the action of the court in

allowing plaintiffs' counsel in his opening statement to refer to an offer of compromise of settlement claimed to have been made by the defendant to the plaintiffs, and also alleges as a second ground of error the action of the court in allowing plaintiff S. R. Hoover to testify over defendant's objection as to the said offer of compromise and settlement. These two grounds of error have been argued together by appellant, and will be considered together by us.

The record as to the opening statement is as follows:

"Mr. Slaymaker: * * * and Mr. Lucas, the state adjuster of the First American Fire Insurance Company, offered $1,167 at that time, but Mr. Hoover said, 'No, I want the full amount of the claim.'

"Mr. McMartin: That is objected to, Your Honor, as not an opening statement, it's an offer to settle, it is improper.

"Mr. Slaymaker: It isn't an offer of settlement at all, it is simply an admission that they owed that amount.

"The Court: Proceed."

The record as to what occurred in connection with the examination of the plaintiff S. R. Hoover is as follows:

"Q. Now what else, what other conversation did you have with him? A. He asked me if I was ready to try to come to terms. I told him I was if we could reach an agreement and he said he would give me $1,167.

"Mr. McMartin: Just a minute. That is objected to as incompetent, irrelevant and immaterial, and move that the same be stricken and withdrawn from the consideration of the jury.

"The Court: Motion overruled. (Defendant excepts.)

"A. He said he would give me $1,167 and I asked him—

"Mr. Martin: Same objection.

"The Court: Same ruling.

"A. —if that meant the household goods and all, and he said, 'It means everything in full for anything that was lost in that fire of April the 8th.'

"Q. What did you tell him? A. I told him I wasn't in a position to accept it.

"Mr. McMartin: At this time the defendant moves the court to strike the answer of the witness in relation to any amount tendered as settlement of this matter, and withdraw the same from the consideration of the jury.

"Mr. Slaymaker: We consent it go out, so there won't be any question about it.

"The Court: All right. The jury will disregard the answer of the witness regarding the offer of compromise and settlement and pay no attention to them."

Appellant contends that the statements of appellees' attorney and the failure of the court to caution appellees' attorney to desist from referring to the offer of compromise and settlement, in his opening statement, would of themselves be prejudicial, and that when followed by the examination of the appellee S. R. Hoover, as to the proposed compromise and settlement and the amount of appellant's offer, and the overruling of appellant's objections to such evidence, the cumulative effect of all these matters on the jury could not be other than prejudicial to appellant. It is so well settled as to require no citation of authority that offers of compromise and settlement cannot be introduced in evidence. It is equally well settled that neither opening statements nor closing arguments of attorneys should go outside of the evidence. Appellees argue and cite cases to the effect that what was said by appellant's agent in this case was more than an offer and amounted to an admission of liability. With this argument, we cannot agree. Nor do we think that the cases cited by appellees support their contention that what was said in the opening statement and in the examination of the witness Hoover amounted to admissions of liability. The facts in the cases cited are entirely different from the facts in this case, and the rule therein followed is not applicable to the facts of this case. In Bowers v. Hanna, 101 Iowa 660, 70 N. W. 745, we said:

"It is well settled that a mere offer to compromise is not an admission of liability. Mundhenk v. Railroad Co., 57 Iowa 721, 11 N. W. 656; Bayliss v. Murray, 69 Iowa 292, 28 N. W. 604. Admissions expressly stated to be made without prejudice for the purpose of effecting a compromise of a matter in controversy cannot be received in evidence against the objection of the person who made them. 1 Greenl. Ev. section 192; 1 Am. & Eng. Enc. Law (2d Ed.) 714. Unqualified admissions are sometimes made in the course of an attempt to settle a dispute which may be shown, notwithstanding the objection of the person who made them. Kassing v. Ordway, 100 Iowa 611, 69 N. W. 1014."

The offer of compromise and settlement involved in this case contained no unqualified admission of liability, was inadmissible as evidence, and should not have been referred to in the opening statement. Nor are we convinced, as argued by appellees, that the subsequent withdrawal of this evidence and the court's oral admonition to the jury to disregard it was sufficient to correct the impression already made on the jury. In Spaulding v. Laybourn, 164 Iowa 277, 145 N. W. 521, in dealing with a somewhat similar situation, this court said:

"The sting was quite as effective as if addressed to the jury in argument and, if counsel had there said that plaintiffs had offered to compromise and settle for $2,500, the poison would have stuck, and the same ruling made by the trial court, as shown by the record, would have been no antidote. * * * We dislike to reverse the case on this ground, but counsel are required to keep within due bounds, and all oral offers of settlement and compromise should be kept secret just as much as a regular offer in open court, and neither party should have any advantage thereof or be made to suffer therefrom. The statute expressly says that a regular offer to confess judgment shall not be mentioned during the trial, and an oral offer to settle and compromise should have the same sanctity."

We think the statements of the attorney in the opening statement and the evidence introduced in regard to the offer of compromise might readily have caused the jury to believe that the defendant had admitted its liability, and we do not believe that the action of the attorney in later withdrawing the evidence and the statements of the court made in connection with such withdrawal can be said with any assurance to have removed the prejudice which had already been injected into the trial of the case. As stated in Spaulding v. Laybourn, supra:

"We dislike to reverse the case on this ground, but counsel are required to keep within due bounds, and all oral offers of settlement and compromise should be kept secret just as much as a regular offer in open court, and neither party should have any advantage thereof or be made to suffer therefrom."

We think the matters here complained of by the appellant were prejudicial, and we feel constrained to hold that the case must be reversed on this account.

II. ·The third error urged by appellant as a ground for reversal. is that the court erred in overruling. its motion for a directed verdict in its favor made at the close of all the evidence, for the reason that the mortgage for $1,250 on the real estate given by plaintiffs to W. F. Boor, and the mortgage for $1,000 on the household goods and personal effects given to W. F. Boor, were given to defraud creditors, could not be invalidated as between the plaintiffs, as mortgagors; and W. F. Boor, as mortgagee, and stood as valid and subsisting mortgages as to all the world except as to creditors, and that these mortgages voided the said policy. The plaintiffs seek to avoid the affirmative defense thus set up by appellant, by claiming that there never was any indebtedness due to W. F. Boor from the plaintiffs and by denying that any mortgage on either the real estate or chattel property was ever delivered to said W. F. Boor. That the execution and delivery of a valid mortgage on the insured property without the consent of the insurer would void the policy, there can be no question. The evidence in this case, however, was such that there was a question of fact to be determined by the jury as to whether or not the mortgages for $1,250 on the real estate and for $1,000 on the household furniture and personal effects had ever been delivered, and this question was by the court submitted to the jury. We do not think the evidence on this proposition was such that the court could, as a matter of law, state that there had been such a delivery of valid mortgages as to constitute a violation of the policy. Under the facts and circumstances of the case, this was a question of fact to be determined by the jury, and the trial court did not commit any error in submitting it for the jury's determination.

III. Appellant complains of instruction 4 given by the court. It appears that at the time the insurance was written there was a mortgage for $1,050 upon the real estate, and that no mention of this mortgage is contained in the policy, and no provision for the payment of loss, if any, to the mortgagee. In its answer the appellant set out the provision of the policy providing that it should be void if the subject of insurance, or any part thereof, be encumbered by any lien or mortgage, alleged the existence of this mortgage, that the appellant company had no notice or knowledge of it, and that, therefore, the contract of insurance sued upon was void. In their reply the appellees alleged that at the time the insurance was taken out they verbally notified the defendant through its agent,

Garris, that the house was covered by the said mortgage and that at said time, and as a part of the taking out of said insurance, the defendant, through its said agent, was fully informed as to said mortgage, its amount, and to whom it was made. On the trial of the case both of the appellees and their son testified that at the time the insurance was taken out the agent of appellant came to the home of appellees to examine it and obtain information with reference to writing the insurance in question; that at that time he asked about incumbrances and was told about this particular mortgage, the amount of it, and to whom it was given. There is further evidence in the record to the effect that said agent, Garris, had knowledge of the said mortgage, because, when it was executed, he took the acknowledgment of the appellees thereto. So far as the appellees' pleadings are concerned, however, the knowledge and notice is claimed to have been given the agent at the time and as a part of the taking out of the insurance, and the evidence introduced by appellees tended to support this allegation. In connection with this issue, the court instructed the jury in its fourth instruction as follows:

"The defendant for one defense relies upon the claim that there was a mortgage on the real estate at the time the policy was written, of which it had no knowledge or information. You are instructed that the clause in the insurance contract which renders the contract void in case there is undisclosed incumbrance on such real estate would defeat recovery in case of loss by fire of the property insured.

"It is plaintiffs' claim that at and before the writing of the contract of insurance the agent, H. M. Garris, who acted as agent in procuring said insurance was fully informed by plaintiffs of said $1,050.00 mortgage. As to such matter you are instructed that if you find that at and before the insurance was written one H. M. Garris was the agent who procured said insurance for plaintiffs from defendant and that he was told and informed of said $1,050.00 mortgage before the insurance was written, then his knowledge of such mortgage was the knowledge of his principal the defendant herein and the defense of undisclosed incumbrance cannot defeat plaintiffs' recovery on said ground, if you find that otherwise plaintiffs are entitled to recover."

Appellant complains of this instruction because it alleges that the jury was not told that the knowledge of the appellant's agent in

reference to the mortgage must have been obtained by said agent in the course of transacting the company's business, and that the company would not be charged with notice of such mortgage obtained through its agent having taken the acknowledgment to the mortgage, or because he may have been told at some time prior to the application for insurance that such mortgage existed.

We think the instruction given was appropriate under the pleadings and evidence, and that, if the appellant had desired further instruction in regard to the insufficiency of the notice given by the mere acknowledgment of the mortgage by appellant's agent or by knowledge of the mortgage given to him prior to the time the insurance was written, it should have asked for such instruction.

IV. Appellant further complains of instruction 6 given by the court, which was as follows:

"You are instructed that even though the plaintiff did sign a chattel mortgage for $1,000.00 and a real estate mortgage for $1,250.00 payable to W. F. Boor and did cause the same to be filed for record in the office of the Recorder of Deeds of Clarke County, Iowa, such acts do not of themselves invalidate the policy sued upon. To invalidate said policy it must be established that there was a delivery of said real and chattel mortgages to the said W. F. Boor before the same would avoid the terms and conditions of said contract of insurance. A mortgage duly signed and executed either on real or personal property, and filed for record does not even, when recorded, cancel and avoid the terms of an insurance contract on the property described in said mortgage unless there was an actual delivering of the mortgage to the mortgagee. And in the case at bar unless you find that there was an actual delivery by plaintiffs of either the real estate or chattel mortgage to the said W. F. Boor, then the defense made by the defendant of incumbrance placed on the property without defendant's consent fails and plaintiffs are entitled to recover if there is no other defense established to their cause of action, and you find that aside from such defense plaintiffs are entitled to recover."

Appellant urges that the giving of this instruction constituted reversible error for the reason that the court told the jury that, in order to constitute a defense, there must have been an *actual* delivery of the mortgages in question; whereas, appellant claims it would be sufficient if there were a constructive delivery of such

mortgage, and the evidence in this case was such that the jury might have found that there was such constructive delivery. We think it must be admitted, as claimed by appellant, that, in order to constitute a good delivery of a deed or mortgage, it is not necessary there be an actual manual delivery of the deed or mortgage into the physical possession of the grantee or mortgagee. What will constitute a good delivery is largely controlled by the intention of the parties and the fact that there is not a manual delivery of a deed or mortgage into the physical possession of the grantee or mortgagee will not defeat the right of such grantee or mortgagee if the delivery is such as was intended by the parties to make the instrument effective. As said in 41 C. J. 426:

"No particular form of ceremony is necessary to constitute a sufficient delivery of a mortgage. It may be by words without acts, or by acts without words, or by both combined. Manual transfer of the document from the hands of the mortgagor to those of the mortgagee is not essential. It is only required that there should be manifested a clear intention of the parties that the instrument shall become operative as a mortgage, and that the mortgagor shall lose, and the mortgagee acquire, the absolute control over it."

See, also, Foley v. Howard, 8 Iowa 56; Connard v. Colgan, 55 Iowa 538, 8 N. W. 351; Day v. Griffith, 15 Iowa 104; Deere v. Nelson, 73 Iowa 187, 34 N. W. 809; Reid v. Abernethy, 77 Iowa 438, 42 N. W. 364; In re Assignment of Bloomfield Woolen Mills, 101 Iowa 181, 70 N. W. 115; Miller v. Miller, 211 Iowa 901, 232 N. W. 498. The evidence in this case shows that the mortgages in question were executed and acknowledged by the appellees and were by them filed for record, and that after being recorded, they were delivered to the bank of which the mortgagee, W. F. Boor, was a director and were retained in said bank. We think the facts and circumstances are such that the jury might have found therefrom that the possession of the said mortgages by the bank was for said W. F. Boor, the mortgagee. We feel constrained to hold, therefore, that in the giving of the instruction complained of the court erred in telling the jury that the giving of such mortgages by the appellees would not avoid the policy of insurance unless there was an *actual* delivery.

 V. Appellant finally complains of the court's ninth instruction, which is as follows:

"The provisions of the contract of insurance of failure to inform defendant of incumbrance on the property before the policy is issued and of the placing of incumbrance on the real or personal property after issuance of the policy of insurance are valid and binding agreements and the insurer has the legal right to make defense to a suit for loss or damage if it claims provisions of the policy have been violated by the insured. The burden of establishing such defenses is upon the defendant to establish such defenses by a preponderance of the evidence. In the case at bar plaintiff admits there was a $1,050.00 mortgage on the real estate at the time the policy was written. They claim however that such fact was known to the agent H. M. Garris who solicited and procured the policy in suit. On this issue plaintiff must establish such knowledge by said agent by a preponderance of the evidence.

"Plaintiffs deny that there ever was any valid or binding real estate or chattel mortgage executed and delivered to the party W. F. Boor. Defendant has the burden of establishing such execution and delivery of such mortgages by a preponderance of the evidence, before such defense is established. Plaintiffs deny that they ever gave or executed any chattel mortgage covering their household goods to the Woodburn Savings Bank. Defendant has the burden of establishing that plaintiffs did execute and deliver one or more chattel mortgages to the Woodburn Savings Bank, by a preponderance of the evidence, before such defense is established against plaintiffs' claim."

It is contended by appellant that the giving of this instruction constituted error, because it places the burden of proof upon the defendant of establishing the execution and delivery of the mortgages by a preponderance of the evidence; whereas, the appellant claims that, having shown that the mortgages were signed, acknowledged, and recorded, the presumption arises that they were properly executed and delivered, and the burden is then shifted to the appellees to overcome this presumption. It is contended by the appellant that the court should have instructed the jury that the burden was thus shifted and that, in telling the jury that the burden was upon the defendant to establish the execution and delivery of the mortgages by a preponderance of the evidence, the court erred.

While it is true that, the defendant having shown the execution, acknowledgment, and recording of the mortgages in question, there

arose a presumption that such mortgages were properly executed and delivered, we do not think the court erred in not telling the jury that the burden then shifted to the plaintiffs. The burden referred to in the instruction is the burden of proof as distinguished from what is sometimes called the burden of evidence. As stated in 22 C. J. 68:

"The general rule is that the burden of proof rests upon the party who has the affirmative of the issue, as determined by the pleadings, or, where there are no pleadings, by the nature of the investigation. This rule is founded upon the obvious purpose of facilitating justice by serving the convenience of the court; and as the rule as to burden of proof is a fixed rule of law, the burden never shifts from the party having the affirmative of the issue."

The defenses referred to in the instruction were affirmative defenses set up in appellant's answer, and, as to such defenses, the burden was upon the appellant. It may be conceded, as claimed by appellant, that when the appellant had introduced evidence as to the signing, acknowledging, and recording of the mortgages in question, a presumption then arose that such mortgages were properly executed and delivered and that it was then incumbent upon the appellees to introduce evidence to meet the presumption thus raised. This, however, would not change the burden of proof. The burden of proof remained upon the appellant at all times to establish its affirmative defense, although the burden of evidence may have shifted to the appellees and imposed upon them the necessity of presenting evidence to meet the presumption raised by the proof of the signing, acknowledging, and recording of the mortgages. The rule as to the burden of proof is well stated by Mr. Justice Deemer in Gibbs v. Farmers & Merchants State Bank, 123 Iowa 737, at page 741, 99 N. W. 703, wherein he states:

"While certain presumptions of fact may arise during the trial of a case, these presumptions do not ordinarily change the burden of proof. It still remains, as in the beginning, upon him who has the affirmative of the issue. Taylor v. Ins. Co., 110 Iowa 621, 82 N. W. 326, and cases cited. There is some confusion in the cases on the proposition, due to an indiscriminate use of the word 'presumption.' Farmers Loan & Trust Co. v. Siefke, 144 N. Y. 354, 39 N. E. 358; Willett v. Rich, 142 Mass. 357, 7 N. E. 776, 56 Am. Rep.

684; 4 Harvard Law Review 70; Central Bridge Corp. v. Butler, 2 Gray [Mass.] 132; Heinemann v. Heard, 62 N. Y. 448; Pease v. Cole, 53 Conn. 53, 22 A. 681, 55 Am. Rep. 53. The burden of the proof and the weight of the evidence are two entirely distinct and separate things. The former does not change, but the latter may, according to the nature and strength of the proofs offered on the trial. See Thayer, Cases on Evidence, pp. 44, 49. Even when the plaintiff has made out a prima facie case, the burden of the proof does not shift to the defendant in any proper sense. All that is meant by such an expression is that the other party must go forward with his proofs if he would not have a judgment against him. Powers v. Russell, 13 Pick. [Mass.] 69. A presumption is sometimes said to shift the burden of the proof, and in some cases this is true; but, generally speaking, it does not have this effect. It simply assists in making out a prima facie case, but does not change the burden of the proof. See article by Judge McClain, 17 Am. L. Rev. 894; Baxter v. Abbott, 7 Gray [Mass.] 71; State v. Lee, 69 Conn. 186, 37 A. 79. When a prima facie case is made out by presumption or otherwise, in order to destroy its effect and shift the burden of producing further evidence, the party denying it must produce evidence tending to negative the claim asserted to a point where, if no more testimony is given, his adversary cannot win by a preponderance of the evidence. Smith v. Sac County, 11 Wall. 139, 20 L. Ed. 102; Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Foster v. Hall, 12 Pick. [Mass.] 89, 22 Am. Dec. 400; M. P. R. R. v. Brazzil, 72 Tex. 233, 10 S. W. 403. It is clearly a misnomer of terms to say that the burden of proof swings like a pendulum from one side to the other during the progress of a trial. All that is meant is that the duty of introducing evidence to meet a prima facie case shifts back and forth. Pease v. Cole, 53 Conn. 53, 22 A. 681, 55 Am. Rep. 53. The burden of proof at all times rests upon him who affirms. 1 Taylor, Ev. (9th Ed.) 276; Am. Notes, 12; Willet v. Rich, 142 Mass. 360, 7 N. E. 776, 56 Am. Rep. 684; Heinemann v. Heard, 62 N. Y. 448."

While it would have been entirely proper for the court to have instructed the jury as to the presumption arising from the introduction of appellant's evidence that the mortgages were signed, acknowledged, and recorded, and the necessity of appellees presenting evidence to meet such presumption, we do not think the failure to

give such further instruction can be held to be prejudicial error, in the absence of a request for such instruction on the part of the appellant. We find no error in the instruction given.

For the reasons set out in the opinion, the judgment of the trial court is reversed and the case remanded for new trial.—Reversed and remanded.

CLAUSSEN, C. J., and EVANS, STEVENS, ALBERT, MITCHELL, and KINTZINGER, JJ., concur.